UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| HOUSE OF FLAVORS, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 09-72-P-H |
| | ) | |
| TFG-MICHIGAN, L.P., | ) | |
| | ) | |
| Defendant | ) | |

**DECISION AND ORDER ON DEFENDANT'S MOTION TO AMEND**

The plaintiff sued the defendant TFG-Michigan ("Tetra") for fraud based on false representations made by Tetra employees during the negotiation of an equipment lease. The plaintiff sought rescission of the lease, which is governed by Utah law. I conducted a bench trial on April 13-15, 2010. On June 17, 2010, after considering post-trial briefing on remedies under the Utah Uniform Commercial Code ("UCC") and my ability to reopen the record on the issue of rescission, I entered judgment for the plaintiff, finding, by clear and convincing evidence, that Tetra had committed fraud and ordering Tetra to disgorge $27,097. Tetra now moves to amend the judgment to state that the plaintiff should, in fact, have to pay Tetra $156,399.15. Def.'s Mot. to Amend at 9 (Docket Item 98). Alternatively, Tetra asks me to reopen the record and take additional evidence on the appropriate remedy. Id. The defendant's Motion to Amend is **Denied**.

The details of this case appear in my Findings of Fact and Conclusions of Law. See House of Flavors, Inc. v. TFG-Michigan, L.P., 2010 U.S. Dist. LEXIS 60203 (D. Me. June 17, 2010). Here I recount only the facts pertinent to the defendant's motion. In its Complaint, the plaintiff sought any and all relief available for fraud under Utah law. See Compl. at 9 (Prayer for Relief) (Docket Item 1). By the time of trial, however, the plaintiff sought only rescission or specific performance of the lease. See Pl.'s Final Pretrial Mem. at 1, 4 (Docket Item 39); Pl.'s Trial Br. at 5 (Docket Item 65). At trial, the parties stipulated the total amount of money that the plaintiff had paid Tetra under the lease. House of Flavors, 2010 U.S. Dist. LEXIS 60203, at *17. As Tetra notes, how the payments were made "was not addressed in more detail at trial," Def.'s Mot. to Amend at 6, even though I heard testimony from Tetra's senior management, including its chief executive officer, as part of both parties' direct cases.

After the close of evidence, I ordered post-trial briefing about whether the lease agreement at issue was a lease for goods within the meaning of the UCC and whether I could reopen the trial record for additional evidence relating to the rescission of the lease. Procedural Order: Issues for Post-Trial Briefing at 1, 2 (Docket Item 91). In its responding brief, Tetra stated that the lease was governed by the UCC; that if I found fraud, the plaintiff "would be entitled to the statutory remedies in Article 2a to the same extent that those remedies would be available to it in the case of default"; and that I should "refrain from . . . reopen[ing] the record to hear evidence regarding . . . rescission." Def.'s Post-Trial Br. at 1-3, 15 (Docket Item 92).

In my subsequent Findings of Fact and Conclusions of Law, I acknowledged that there was some "uncertainty" about the precise way the deal between the parties had been structured, but I found that "[f]or the purposes of calculating damages, the precise number of payments is immaterial because the total payment has been stipulated." House of Flavors, 2010 U.S. Dist. LEXIS 60203, at *34-35 n.19. Using trial evidence about the transaction (thirty-six monthly lease payments plus a buyout at twelve percent of cost), I calculated a "baseline [value] for determining that [the plaintiff] ha[d] suffered an injury due to Tetra's fraud." Id. at *37. Based on that value, I ordered Tetra to disgorge $27,097, which represents the different between what House of Flavors actually paid Tetra and the deal's "baseline" value (plus some fees). Id. at *40.

Tetra now argues that I made factual errors in calculating the "baseline" value of the transaction and offers me previously undisclosed details about the plaintiff's payments under the lease. Def.'s Mot. to Amend at 1-6. Tetra concedes that it presented none of this evidence at trial. Id. at 6. Neither does it suggest that it discovered these facts only recently. Rather, Tetra says that it could not have foreseen the need to present detailed evidence about the deal because the plaintiff never argued for the applicability of the UCC provision on which I based the remedy. Def.'s Reply in Support of Mot. to Amend at 4 (Docket Item 108).

"Rule 59(e) motions are granted only where the movant shows a manifest error of law or newly discovered evidence," Kansky v. Coca-Cola Bottling Co.,

492 F.3d 54, 60 (1st Cir. 2007) (citation omitted), or that the court "has patently misunderstood a party" or "has made an error [of] apprehension," Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 82 (1st Cir. 2008) (citation omitted). But the First Circuit has "emphasized that Rule 59(e) 'does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" Crawford v. Clarke, 578 F.3d 39, 44 (1st Cir. 2009) (quoting Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997)).

Tetra was aware before trial that rescission was the remedy at issue here. Tetra chose at trial not to present evidence about the structure of the lease or to explain the mechanics of the payment structure, even though it offered testimony from its chief executive officer, executive vice president, and senior vice president—witnesses with direct personal knowledge of the transaction. Tetra also does not argue that relief was not available under the UCC. Tetra conceded this point when I asked about it specifically in my request for post-trial briefing. See Def.'s Post-Trial Br. at 2-3 ("[I]f the Court finds that fraud was involved in connection with this lease, [the plaintiff] would be entitled to the statutory remedies in Article 2a to the same extent that those remedies would be available to it in the case of default.). Moreover, Tetra argued explicitly that the record should not be reopened as to rescission. It made a tactical choice to argue that the plaintiff had failed to prove damages and that the record lacked the information necessary for me to craft a remedy sounding

4

in rescission.  See Id. at 8-9, 13-14.  Tetra did represent that it had "[r]eceived $1,769,319 in rental payments, which does not cover TFG's cost of funds" and "expected to receive a yield appropriate for the credit and default risk posed by [the plaintiff]," id. at 8-9, but that was the extent of its discussion of the details of this deal.  That was Tetra's choice to make.

Did I "misapprehend" Tetra's evidence at trial?  No.  I understood exactly what the plaintiff had paid Tetra and the basic structure of the deal.  I based my decision upon the admitted evidence.

In the end, this is an equitable remedy.  I never intended that the remedy would be governed strictly by the lease terms.  That would have been specific performance.  Moreover, the evidence at trial showed that the full contours of the deal were not determined by the lease.  On the one hand, Tetra's own officers testified that the lease contemplated an automatic transfer of property for which the lease plainly does not provide, and on the other hand, there is the clearly and convincingly established fact of Tetra's fraud.  In determining the equitable remedy, I took the basic structure of the deal to establish a "baseline" against which to measure a "just" result under the Utah statute.  Tetra had every opportunity at trial and in post-trial briefing to argue for what it thinks would have been a "just" remedy in this case.  In fact, it did.  It argued for no remedy at all.  But I rejected that argument and devised a remedy based upon the admitted evidence.

Tetra rejected the earlier opportunity to reopen the record. Tetra's motion now to amend the judgment or to reopen the record and take additional evidence is therefore **DENIED**.

**SO ORDERED.**

**DATED THIS 17TH DAY OF AUGUST, 2010**

/s/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**